IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Thomas Marvin Fair, Jr., ) | |
| ) | Civil Action No. 6:10-1268-RMG-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jon E. Ozmint, Director of the South ) | |
| Carolina Department of Corrections, ) | |
| individually and in his official capacity, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 51). The plaintiff, a state prisoner proceeding *pro se*, filed his complaint seeking relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On November 11, 2010, the defendants filed a motion for summary judgment. On November 12, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On February 1, 2011, the plaintiff filed his response in opposition to the motion.

**FACTS PRESENTED**

The plaintiff is currently incarcerated at the Lee Correctional Institution ("LCI"). He alleges in his complaint that his constitutional rights have been violated by being placed

in security detention "lock-up" because it was determined that he was a sexual predator following review because of the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.* The plaintiff claims that his placement in security detention violates his due process rights and his right to be free from cruel and unusual punishment. He seeks a "declaration that the acts and omissions described herein violated plaintiff's rights under the constitution and laws of the United States"; a preliminary injunction requiring the defendants to "stop the unconstitutional practice"; compensatory damages in the amount of $5,000 against each defendant; punitive damages in the amount of $6,000 against each defendant; a jury trial; and costs.

Defendant Ozmint is the former Director of the SCDC; defendant Ward is the SCDC Division Director of Operations; defendant Sligh is the SCDC Operations Coordinator; defendant Padula is the Warden of LCI; defendant York is a Classification Records Manager at LCI; defendant Oberman is the Supervisor of the Special Management Unit ("SMU") at LCI; defendant Davis is a Lieutenant at LCI; and defendant Hilton is a Classification Caseworker at LCI.

> The plaintiff alleges the following in his complaint:
>
> On January 8, 2008 Plaintiff was taken out of the general population at Lee Correctional Institution and placed in administrative segregation in the Special Management Unit (SMU) without a hearing.
>
> After being placed in a cell, Plaintiff then signed a Notice of Review/Hearing form to appear before the Institutional Classification Committee (ICC) on January 10, 2008. Document attached as Exhibit (A).
>
> On January 10, 2008 Plaintiff appeared before the ICC. The committee member were classification caseworker C. York - chairperson, SMU Administrator Bruce Oberman, and Lieutenant Anthony Davis.
>
> It was at this review/hearing that Plaintiff became aware that the review/hearing is a spin-off of a November 8, 2007 Prison Rape

2

> Elimination Act (PREA) Committee review, that was held without my presence or knowledge. The PREA Review Committee recommended that Plaintiff be designated a sexual perpetrator and placed in Security Detention (SD) status.
>
> Robert E. Ward - Division Director of Operations concurred with the PREA Committee's recommendation. Document attached as Exhibit (B).
>
> During the January 10, 2008 review/hearing Plaintiff asked the committee if he could make a statement and present evidence in his behalf. Chairperson C. York then informed Plaintiff that he could not. Plaintiff then asked the committee would their decision be independent if I "were" to be "allowed" to make a statement or present evidence in my behalf, and Chairperson C. York said that the committee could not make an independent on their own and that I will be designated a sexual perpetrator.

(Comp. at pp. 8-9).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## *PREA Review Committee*

In his complaint, the plaintiff named as a defendant "The Rest of the Prison Rape Elimination Act Review Committee, individually and in their official capacities," without identifying anyone on the committee other than defendant Sligh (*see* Sligh aff. ¶¶4). It does not appear that any other members of the Committee were served with the summons and complaint. The defendants argue that any claims against the remaining members of the Committee should be dismissed as the plaintiff has failed to show those members acted personally in the deprivation of his constitutional rights. *See Vinnedge v. Gibbs*, 550

F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail."). This court agrees. Based upon the foregoing, any claims against the "rest" of the PREA Review Committee should be dismissed.

***Due Process***

The plaintiff argues that his placement in SMU violates his due process rights. Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. *Wolff v. McDonnell*, 418 U.S. 539, 558-62 (1974). Furthermore, there is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983). Thus, the placement and assignment of inmates to particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review unless state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-1017 & n.1 (4th Cir. 1984) (collecting cases).

It is well settled in this judicial district that no existing state or federal laws confer any protected liberty interests upon inmates from being classified or placed in administrative segregation within a particular prison or in a particular section of a prison. *See, e.g., Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (If a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

Furthermore, in *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty

5

interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 485.

Defendant Sligh submitted an affidavit in support of the motion for summary judgment in which he indicates that Congress enacted the PREA in 2003 in order to establish a zero-tolerance policy regarding rape in prisons and other confinement facilities. The purpose of the Act is to protect inmates in correctional facilities from sexual abuse or sexual assault. The SCDC developed a policy to effect the mandates of PREA. The policy provides that staff of a correctional facility who become aware that an inmate has a "history of/and or prior convictions of sexual assaults" will forward this information to the PREA Review Committee so that the Committee can make its own review and take appropriate action (Sligh aff. ¶2).

The PREA Review Committee is a multi-disciplinary committee that consists of five members who meet to discuss inmates that have been referred to the Committee for potential classification as sexual perpetrators. Sligh attests that an inmate is typically referred by the warden in the institution where he is housed. When a referral comes to the Committee, the Committee investigates the individual's history and discusses all aspects of the case, including the warden's referral and supporting documentation, the inmate's prior or current mental health issues, the inmate's incarceration history, and any legal issues. The Committee then makes a recommendation to the Deputy Director of Operations regarding the inmate's classification. If an inmate is determined to be a sexual perpetrator by the Committee, the Committee also makes a recommendation as to whether the inmate should be placed in lock-up or in the general population (Sligh aff. ¶3).

Sleigh also avers that classification as a sexual perpetrator under the PREA is not considered to be a permanent classification, and all inmates who receive this classification have informal reviews on a monthly basis and formal reviews every six

months. Sligh attests that security detention is not a form of punishment, but is designed to protect inmates within the SCDC (Sligh aff. ¶¶7-8).

With regard to the plaintiff in particular, Sligh attests that the Committee reviewed the plaintiff's classification status on November 8, 2007. Sligh was the Chairperson of the Committee. The Committee considered the plaintiff's entire history since the beginning of his incarceration. Records revealed that the plaintiff had been accused and found guilty of sexually assaulting another inmate in July 2006. Accordingly, the Committee determined that the plaintiff is a sexual perpetrator and recommended, because of his specific history, that he be placed in lock-up (Sligh aff. ¶4).

The plaintiff is in lock-up, which consists of 23 hours of lock down with one hour of recreation a day. Recreation is outside, but the plaintiff is segregated from other inmates in order to protect those inmates. If there are no discipline problems, the plaintiff is allowed to shower three times a week. The plaintiff is fed in his cell, and he has access to library books and other items. Given the plaintiff's particular history, he is not double-celled but is in a single occupancy cell. Sligh attests that the nature of the plaintiff's confinement does not exceed similar confinement for inmates in similar situations in either duration or degree of restriction (Sligh aff. ¶6).

As argued by the defendants, the plaintiff cannot show that he has a protected liberty interest in his security or custody classification. In a similar case, *Gadeson v. Reynolds*, C.A. No. 2:08-3702-CMC-RSC, 2009 WL 4572872 (D.S.C. 2009), the plaintiff alleged that his due process rights, his right to be free from cruel and unusual punishment, and his double jeopardy rights were violated when he was wrongfully placed in lock-up after it was determined that he was a sexual predator following review under the PREA. In that case, the Honorable Cameron McGowan Currie, United States District Judge, found as follows:

> This is not a difficult case. Plaintiff has no constitutional right to placement in any particular custody classification. *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir.1997)["[A] prisoner does

7

> not have a constitutional right to be housed at a particular institution, ..., [or] to receive a particular security classification...."]; *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir.1995)["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].
>
> In order to show a constitutional violation with respect to a custody classification, the conditions must exceed the sentence imposed or create an atypical or significant hardship in violation of a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). There is no such evidence in this case. The defendants are entitled to summary judgment.

*Gadeson*, 2009 WL 4572872, at *4. *See also Guess v. Ozmint*, C.A. No. 9:08-3076-TLW-BM, 2009 WL 3255224 (D.S.C. 2009). For the same reasons, the plaintiff's due process claims fail.

Furthermore, to the extent the plaintiff argues that the defendants have violated SCDC policies or procedures in placing him in this custody classification, even if this claim is true, violations of policies and procedures do not rise to the level of a constitutional violation. *See Riccio v. County of Fairfax, Virginia*, 907 F.2d 1459, 1469 (4th Cir.1990) (if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies that fail to reach the level of a constitutional violation are not actionable under § 1983). The defendants are entitled to summary judgment on this claim as well.

### *Conditions of Confinement*

The plaintiff also alleges that the conditions of his confinement violate his constitutional rights. To succeed on any Eighth Amendment claim regarding conditions of confinement, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently

culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In order to demonstrate an extreme deprivation, an individual "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Without such showing, a plaintiff must demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. *See Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)). The plaintiff has made no such showing.

In *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, the Fourth Circuit Court of Appeals held that a group of inmates ordered to long-term segregated confinement did not violate their Eighth Amendment rights because their alleged damages of depression and "great stress" causing them "great emotional and physical suffering" did not constitute the "extreme deprivation" required to make out a conditions-of-confinement claim. 174 F.3d 464, 471-72 (4th Cir. 1999). The inmates complained that they were confined to their cells for 23 hours per day without radio or television, that they receive only five hours of exercise per week, and that they may not participate in prison work, school, or study programs. *Id.* at 471.

Here, the plaintiff has failed to present any evidence of a serious physical or emotional injury, much less evidence of conduct on behalf of any of the defendants that was deliberately indifferent to the plaintiff's serious medical or other needs. Accordingly, such claim fails.

### *Grievances*

The plaintiff appears to allege that his constitutional rights were violated because the defendants failed to respond to his written staff requests and/or grievances. "The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75 (4th

9

Cir.1994). Even assuming that defendants violated their own grievance procedures, such actions do not state a claim that is actionable under Section 1983. *See Brown v. Dodson*, 863 F.Supp. 284, 285 (W.D.Va.1994). Accordingly, this claim fails.

### *Qualified Immunity*

Furthermore, as an additional ground for dismissal, the defendants in their individual capacities are entitled to qualified immunity as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and its progeny as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. Further, in their official capacities, the defendants may not be sued under Section 1983 for damages as they are not "persons" within the meaning of Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).

### *State Law Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c).

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 51) be granted.

April 15, 2011　　　　　　　　　　　　　　　　s/Kevin F. McDonald
Greenville, South Carolina　　　　　　　　　　United States Magistrate Judge