IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Thomas Marin Fair, Jr., ) | Civil Action No. 6:10-cv-1268-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| Jon E. Ozmint, Director of the South ) | |
| Carolina Department of Corrections, ) | |
| individually and in his official capacity, et ) | |
| al., ) | |
| Defendants. ) | |

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. As a result, this matter was referred to a Magistrate Judge for pre-trial proceedings. The Magistrate Judge has made a report and recommendation that Defendants' motion for summary judgment be granted. (Dkt. No. 73). The Plaintiff has objected. After a *de novo* review, this Court adopts the recommendation of the Magistrate Judge.

**Analysis**

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report and

1

Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

In his complaint, the plaintiff named as a defendant "The Rest of the Prison Rape Elimination Act Review Committee, individually and in their official capacities," without identifying anyone on the committee other than Defendant Sligh. (*see* Dkt. No. 51-2, Sligh aff. ¶¶4). It does not appear that any other members of the Committee were served with the summons and complaint. The defendants argue that any claims against the remaining members of the Committee should be dismissed as the plaintiff has failed to show those members acted personally in the deprivation of his constitutional rights. *See Vinnedge v. Gibbs*, F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail."). This court agrees and any claims against the "rest" of the PREA Review Committee fail as a matter of law.

The plaintiff further alleges that his placement in the Special Management Unit ("SMU") violates his due process rights. Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. *Wolff v. McDonnell*, 418 U.S. 539, 558-62 (1974). Furthermore, there is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983). Thus, the placement and assignment of inmates to particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review unless state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-1017

& n.1 (4th Cir. 1984). In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Defendant Sligh submitted an affidavit in support of the motion for summary judgment in which he indicates that Congress enacted the PREA in 2003 in order to establish a zero-tolerance policy regarding rape in prisons and other confinement facilities. The purpose of the Act is to protect inmates in correctional facilities from sexual abuse or sexual assault. The SCDC developed a policy to effect the mandates of PREA. The policy provides that staff of a correctional facility who become aware that an inmate has a "history of/and or prior convictions of sexual assaults" will forward this information to the PREA Review Committee so that the Committee can make its own review and take appropriate action. (Dkt. No. 51-2, Sligh aff. ¶2).

The PREA Review Committee is a multi-disciplinary committee that consists of five members who meet to discuss inmates that have been referred to the Committee for potential classification as sexual perpetrators. When a referral comes to the Committee, the Committee investigates the individual's history and discusses all aspects of the case, including the warden's referral and supporting documentation, the inmate's prior or current mental health issues, the inmate's incarceration history, and any legal issues. The Committee then makes a recommendation to the Deputy Director of Operations regarding the inmate's classification. Sligh also avers that classification as a sexual perpetrator under the PREA is not considered to be a permanent classification, and all inmates who

receive this classification have informal reviews on a monthly basis and formal reviews every six months. Sligh attests that security detention is not a form of punishment, but is designed to protect inmates within the SCDC. (Dkt. No. 51-2, Sligh aff. ¶¶7-8).

With regard to the plaintiff in particular, Sligh attests that the Committee considered the plaintiff's entire history since the beginning of his incarceration. Records revealed that the plaintiff had been accused and found guilty of sexually assaulting another inmate in July 2006. Accordingly, the Committee determined that the plaintiff is a sexual perpetrator and recommended, because of his specific history, that he be placed in lock-up. (Dkt. No. 51-2, Sligh aff. ¶4). The plaintiff is in lock-up, which consists of 23 hours of lock down with one hour of recreation a day. Recreation is outside, but the plaintiff is segregated from other inmates in order to protect those inmates. If there are no discipline problems, the plaintiff is allowed to shower three times a week. The plaintiff is fed in his cell, and he has access to library books and other items. Given the plaintiff's particular history, he is not double-celled but is in a single occupancy cell. Sligh attests that the nature of the plaintiff's confinement does not exceed similar confinement for inmates in similar situations in either duration or degree of restriction. (Dkt. No. 51-2, Sligh aff. ¶6).

Here, the plaintiff cannot show that he has a protected liberty interest in his security or custody classification. In a similar case, *Gadeson v. Reynolds*, C.A. No. 2:08-3702-CMC-RSC, 2009 WL 4572872 (D.S.C. 2009), the plaintiff alleged that his due process rights, his right to be free from cruel and unusual punishment, and his double jeopardy rights were violated when he was wrongfully placed in lock-up after it was

4

determined that he was a sexual predator following review under the PREA. In that case, the Honorable Cameron M. Currie, United States District Judge, opined:

> This is not a difficult case. Plaintiff has no constitutional right to placement in any particular custody classification. *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997) ("[A] prisoner does not have a constitutional right to be housed at a particular institution, . . . [or] to receive a particular security classification...."); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) ("[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation.").

The same is true and this case and there is no evidence that Plaintiff's classification, the conditions exceed the sentence imposed or create an atypical or significant hardship in violation of a protected liberty interest. Thus, Defendant's are entitled to judgment as a matter of law. Furthermore, to the extent the plaintiff argues that the defendants have violated SCDC policies or procedures in placing him in this custody classification, even if this claim is true, violations of policies and procedures do not rise to the level of a constitutional violation. *See Riccio v. County of Fairfax, Virginia*, 907 F.2d 1459, 1469 (4th Cir.1990) (if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

The plaintiff also alleges that the conditions of his confinement violate his constitutional rights. To succeed on any Eighth Amendment claim regarding conditions of confinement, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In order to demonstrate an extreme deprivation, an individual "must produce evidence of a serious or significant

physical or emotional injury resulting from the challenged conditions." *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). The plaintiff has made no such showing. Here, the plaintiff has failed to present any evidence of a serious physical or emotional injury, much less evidence of conduct on behalf of any of the defendants that was deliberately indifferent to the plaintiff's serious medical or other needs. Accordingly, this claims fails as well.

Plaintiff's Complaint also appears to allege that his constitutional rights were violated because the defendants failed to respond to his written staff requests and/or grievances. "The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994). Thus, to the extent the Complaint attempted to allege a cause of action relate to grievance procedures—the claim fails as a matter of law.

### Conclusion

Based on the above, Defendants' motion for summary judgment is **granted**[1]. (Dkt. No. 51) and this Court declines to exercise supplemental jurisdiction over any claims arising under state law.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

---

[1] Notwithstanding the above, the defendants in their individual capacities are entitled to qualified immunity as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and its progeny as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. Further, in their official capacities, the defendants may not be sued under Section 1983 for damages as they are not "persons" within the meaning of Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).

May 2, 2011
Charleston, South Carolina